JUDGE FRANK MONTALVO

IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS

| | |
|---|---|
| Jonathan Vega, Plaintiff, | ) |
| | ) CASE NO. |
| v. | ) |
| | ) COMPLAINT FOR |
| City of El Paso, a Governmental Entity; | ) VIOLATION OF CIVIL RIGHTS |
| Luis A Martinez # 3149, Individually; | ) |
| Fred Arias # 1025, Individually; | ) (42 U.S.C. § 1983) |
| and DOES 1 through 10, inclusive, | ) |
| Defendants | ) JURY TRIAL DEMANDED |
| | ) |

FILED 2021 MAY 20 PM 12:20

**EP21CV0116**

Plaintiff Jonathan Vega for his Complaint against the above-named Defendants, respectfully states and alleges as follows:

### JURISDICTION

1. Plaintiff brings this civil rights lawsuit pursuant to 42 U.S.C. Section 1983 to redress the deprivation by Defendants, at all times herein acting under color of state law, of rights, secured to Plaintiff under the Constitution of the United States, including the Fourth, Eighth, and Fourteenth Amendments.

2. Jurisdiction is conferred on this Court by 28 U.S.C. Sections 1343(a)(3) and (a)(4), which provide for original jurisdiction in this Court of all suits brought pursuant to 42 U.S.C. Section 1983. Jurisdiction is also conferred by 28 U.S.C. Section 1331 because claims for relief derive from the Constitution of the United States and the laws of the United States.

3. Venue is properly established in the United States District Court for Western District of Texas pursuant to 28 U.S.C. Section 1391, in that the events and circumstances herein alleged occurred in the City of El Paso, County of El Paso, Texas, and all of the Defendants were either employed in or are residents of the City of El Paso, El Paso County in the State of Texas where

jurisdiction is the United States District Court for the Western District of Texas located in El Paso, Texas.

## PARTIES

4. At all times relevant to the facts and circumstances in the Complaint, Plaintiff **Jonathan Vega** (hereinafter referred to as "**Jonathan**") was a resident of the City of El Paso, El Paso County, Texas.

5. At all times relevant to the facts and circumstances in the Complaint, Defendant **CITY OF EL PASO** (hereinafter referred to as "**El Paso Police Department**") is a governmental entity, duly organized and existing under the laws of the State of Texas. At all times herein the City of El Paso Police Department was the law enforcement arm of the City of El Paso and under the administrative and operational control of the City of El Paso.

6. At all times relevant to the facts and circumstances in the Complaint, Defendant **Luis A Martinez #3149** (hereinafter referred to as "**Martinez**") was an individual residing on information and belief in El Paso County, Texas and an officer, agent, and/ or employee of the City of El Paso and whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law.

7. At all times relevant to the facts and circumstances in the Complaint, Defendant **Fred Arias #1025** (hereinafter referred to as "**Arias**") was an individual residing on information and belief in El Paso County, Texas and an officer, agent, and/ or employee of the City of El Paso and whose acts as alleged herein were performed solely in his individual capacity and/or under color of state law.

8. DOES 1-5, inclusive, are defendant police officers employed by Defendant El Paso Police Department, acting within the course and scope of their employment by defendant EL PASO, who were directly involved in the unlawful arrest and excessive use of force against Jonathan.

9. DOES 5-10, inclusive, are defendant police officers employed by defendant El Paso Police Department acting within the course and scope of their employment by defendant El Paso Police Department, who were employed in a supervisory capacity by defendant El Paso Police Department and were responsible in some manner for properly and adequately hiring, retaining, supervising, disciplining, and training named defendant police officers employed by EL PASO in the proper and reasonable use of force, effecting proper detentions and arrests, and treating persons in a manner that is not racially discriminatory.

10. Plaintiff is ignorant of the true names and capacities of defendant DOES 1-10, inclusive, and therefore sues these defendants by such fictitious names. Plaintiff is informed and believes and thereon alleges that each defendant so named is responsible in some manner for the injuries and damages suffered by plaintiff as set forth herein. Plaintiff will amend his Complaint to state the true names and capacities of defendants DOES 1 through 10, inclusive, when they have been ascertained.

11. In engaging in the conduct described herein, defendant police officers acted under color of law and in the course and scope of their employment with defendant EL PASO. In engaging in the conduct described herein, defendant police officers exceeded the authority vested in them as police officers under the United States Constitution.

12. Plaintiff is informed and believes, and on such basis alleges, that each of the named Defendants was and is the agent, employee, principal, employer and/or co-conspirator of each of the remaining Defendants and/or vice versa. In addition, Plaintiff is informed and believes, and on such basis alleges, that the Defendants named hereinabove, and each of them, are responsible in some manner for the occurrences herein alleged, and that each of the above-named Defendants conspired with, and/or sided and/or abetted and/or jointly collaborated with each of the remaining Defendants and identified persons in committing the acts herein alleged in their individual

capacities.

13. Plaintiff is informed and believes and on such basis alleges that each of the above named Defendants and co-conspirators was acting under the color of state law in committing the acts herein alleged, and that in doing the things herein alleged Defendants, and each of them, were acting within the course and scope of their duties as employees or agents of each other in their individual capacities.

14. Plaintiff is informed and believes and on such basis alleges that at all relevant times, Defendants, and each of them, were the knowing agents and/or alter egos of one another, and that Defendants directed, ratified, and/or approved the conduct of each of the other Defendants, and each of their agents or employees, and are therefore vicariously liable for the acts and omissions of their co-defendants, their agents and employees, as more fully alleged herein. Moreover, all of the Defendants and identified persons agreed upon, approved, ratified, and/or conspired together to commit all of the acts and/or omissions alleged in this Complaint in their individual capacities.

## FACTUAL ALLEGATIONS

15. On May 21, 2019, around 1:34 p.m., two undercover agents arrived at plaintiff Jonathan's place of employment at 7315 Remcon Circle where he also resided. The undercover detectives were with the El Paso Police Department and were executing an arrest warrant for Jonathan's roommate Robert whom was wanted for fraud. The senior detective had shown Jonathan his police badge as he questioned Robert's whereabouts but no search warrant was ever presented to Jonathan. Jonathan had explained that Robert was not at the location and thought he left with his girlfriend whom arrived about thirty minutes before detectives but Jonathan gave them consent to enter and

look around. The senior detective instructed Jonathan to check around and to give him up or else he would be going to jail for assisting Robert. Jonathan then entered into the attached managers apartment to check Roberts room but only found his dog inside.

16. As Jonathan was walking back towards the office, he heard a loud noise coming from within his bedroom closet. He informed the two undercover detectives that someone was inside his closet and offered to provide the keys to the closet and go unlock it for them. Additional undercover detectives were heard knocking on the apartment front door in which the senior detective instructed Jonathan to open and Jonathan also gave them consent to enter the building.

17. Senior detective instructed Jonathan to go back in the office with the female detective while he and two other detectives checked the bedroom closet for Robert. At the same time defendant Arias and another undercover detective had entered into the office and defendant Arias was told to stay with Jonathan while the other detective followed her into the apartment to assist detectives who were already in Jonathan's bedroom. Using the keys that were provided by Jonathan, detectives were able to enter the closet and found suspect Robert hiding inside. Senior detective called out for Robert to come out as he was able to be seen before lunging forward kicking the suspect and striking him with his gun. Robert did not fight against their demands and was pulled out of the closet and thrown onto Jonathan's bed where three other detectives held him down and another handcuffed the subject.

18. During that time defendant Martinez had walked into the office and defendant Arias informed him of where the others were located while he stayed with Jonathan in the office. Defendant Martinez had just entered the apartment before being turned away by the senior detective who was headed back towards the office where defendant Arias and Jonathan were located.

19. As defendant Martinez walked into the office, he informed Jonathan that he was under arrest for lying to protect the subject. Jonathan claimed that he was not trying to protect his roommate and thought he had left with the girlfriend. Defendant Martinez stated the defendant was lying by claiming his answer was "BS" and that Jonathan knew Robert was inside and informed him he would be going down with the subject. He then instructed Jonathan to turn around as defendant Arias continued to hold Jonathan in the corner of his office near a desk and file cabinet. Jonathan began asking why he was under arrest as he was not aware of what was going on and tried turning around to face defendant Martinez.

20. At that moment defendant Martinez told the plaintiff not to resist arrest before immediately pushing Jonathan forward causing him to slam into the corner of the file cabinet nearby and defendant Arias to also fall forward onto Jonathan. From the hard impact Jonathan yelled out in pain and both defendant Martinez and Arias quickly pulled him up against the file cabinet and defendant Martinez handcuff Jonathan.

21. From the impact Jonathan's ear was bleeding and had been ripped apart when both defendant Martinez and Arias then escorted Jonathan to the front of the apartment while they waited for medics to arrive. The owner of the Self-Storage facility, where Jonathan was the property manager, then arrived with Jonathan's supervisor and entered the office where the senior detective was located. The senior detective began explaining that Jonathan claimed he thought Robert had left with the girlfriend before the other detectives searched the apartment and found the subject inside the bedroom closet. He stated that Jonathan acted like he was trying to get away from the officers and at one point fought with both detective Martinez and Arias. The owner then responded "at least you didn't have to shoot them," before the senior detective claimed that "it was close" when on the video he instead used his weapon to assault Robert.

22. A police unit had already taken Robert and another had arrived to take Jonathan to the hospital for his injuries before taking him to jail on charges of resisting arrest and hindering an apprehension. Any law enforcement who were involved, either at the time of arrest, while being transported, or at the downtown jail location, failed to read Jonathan his Miranda rights. During that time undercover detectives used the keys that Jonathan provided to open a file cabinet inside the bedroom closet to search illegally before continuing with his closet and bedroom. Jonathan's parents had arrived at the scene and were taken inside where Jonathan's father had asked who gave them permission to enter the building. The senior detective responded that the owner of the company was contacted prior to them entering and gave them permission to search the office and apartment even though a lease had been signed by Jonathan at the beginning of his employment. While searching the apartment detectives noticed that Jonathan had four motion activated security cameras including one located above the file cabinet in the office, one in the dining area with view of the living room and hallway, another camera in his closet, and another they were unable to locate the in his bedroom behind the window curtain facing the door and his closet. Once they were aware of the cameras, they began searching for Jonathan's phone used to control the cameras and the cameras base station which they were unable to find.

23. During that time a gentleman who introduced himself to Jonathan as their Police Sergeant arrived and walked through the office and apartment with detectives explaining what happened. Defendant Martinez then pulled the Sergeant aside saying he was already dealing with another incident and now with the ear injury just as Jonathan's mother walks in to get supplies to clean her sons' blood inside the office. The Sergeant can then be heard on video telling the detective "Let's write a statement", then later saying 'because you, referring to Jonathan, were hindering an apprehension," before defendant Martinez interrupts and says that Jonathan had cameras

7
COMPLAINT

everywhere and points towards the camera in the dining area before they walk outside to continue their conversation. The Police Sergeant later turns the camera in Jonathan's closet, dining room, and office by stating he did not want his undercover detectives to be seen in plain clothing.

24. Jonathan received twelve stitches at the hospital due to his injury and was taken to jail where he later suffered excruciating pain from his ear and was denied medical attention when the medication given at the hospital wore off. Jonathan was bonded out and released to his parents the following morning and learned he had been fired from his job and locked out of his apartment for a week before family members were able to remove all of his belongings as the company had banned him from the property. He later complained about hearing problems before having a hearing test completed and a hearing specialist confirm he had significant hearing loss in the ear that had been injured from the arrest and would require surgery, a hearing aid, or both in order to correct the problem. Jonathan also met with a psychologist who provided counseling and diagnosed Jonathan with acute stress disorder which was later changed to PTSD as he still has issues today from the traumatic arrest. Jonathan remains on bond for the charges placed against him for resisting and hindering due to delays caused by the covid 19 pandemic which still have not been rescheduled.

# FIRST CAUSE OF ACTION

(42 U.S.C. Section 1983)

**(Against all named Defendants in their Individual Capacities Only and DOES 1-5, but Excluding the City of El Paso)**

25. Plaintiff hereby re-allege and incorporates by reference herein paragraphs 1 through 24 of the

Complaint.

26. In doing the acts complained of herein, the defendants "solely" in their individual capacities and DOES 1-5, inclusive, acted under color of law to deprive plaintiff of certain constitutionally protected rights including, but not limited to:

   a. The right to be free from unreasonable searches and seizures, as guaranteed by the Fourth amendment to the United States Constitution. As stated above the individually named Defendants seized, searched, arrested, and handcuffed the Plaintiff without any probable cause to seize Plaintiff in violation of his (4th) <u>amendment rights.</u>

   b. The Defendant Police Officers, especially Martinez, also inflicted excessive force on the Plaintiff in violation of his constitutional rights under the <u>(8th) amendment and (14th) amendment to the Constitution of the United States</u>.

   c. The right not to be deprived of life or liberty without due process of law, as guaranteed by the <u>(14th) amendment</u> to the United States Constitution; The Plaintiff's guaranteed constitutional civil rights were violated based on the outrageous claims and actions of the Defendants. The outrageous actions and abuse of appointed authority of the Defendants has resulted in permanent hearing loss and disfigurement from his injury as well as mental and emotional pain and suffering caused by the traumatic incident.

   d. Plaintiff suffered injury that resulted directly and only from the use of force that was clearly excessive to the need, and the force used was objectively unreasonable.

   e. Plaintiff was denied his liberty rights under the 14th Amendment due to the unlawful search and seizure by the Defendants.

   f. These rights under the 4th, 8th, and 14th amendments were clearly established federal constitutional rights, years before the incident complained of by Plaintiff.

g. Plaintiffs' damages proximately caused by the Defendants include unlawful arrest and imprisonment, physical pain and suffering, mental pain and suffering, loss of wages due to false claims causing termination by the defendants, disfigurement, past and future medical expenses, and humiliation.

h. WHEREFORE, plaintiffs pray for relief as hereinafter set forth below.

## SECOND CAUSE OF ACTION

### (42 U.S.C. Section 1983)

### (Against defendant CITY OF EL PASO only and DOES 6-10, Inclusive)

### (Monell Related Claims)

27. Plaintiff hereby re-alleges and incorporates by reference herein paragraphs 1 through 26 of the Complaint to the extent to incorporate that the conduct of the defendants was to the most part the result of official policies and procedures of the El Paso Police Department. City of El Paso is <u>only</u> being sued under Monell.

28. Defendant City of El Paso is a "person" within the meaning of 42 U.S.C. § 1983 and subject to civil liability pursuant to the doctrine outlined in *Monell v. Dept. of Social Services* (1978) 436 U.S. 658.

29. Defendant City of El Paso, including through its Police Department and those individuals in their official capacity who had supervisory and/or policy making authority, had a duty to Plaintiff at all times to establish, implement and follow policies, procedures, customs and/or practices (hereinafter referred to as "policy" or "policies") which confirm and provide the protections guaranteed under the United States Constitution, including those under the Fourth, Eight, and Fourteenth Amendments, to include without limitation, the protection of the right to be free from unlawful search and seizures and excessive force applied by its police officers.

30. Defendant El Paso Police Department also had a duty to use reasonable care to select, assign, supervise, train, control and review the activities of its agents, officers, employees and those acting under them, including within its Police Department so as to protect these constitutional rights; and to refrain from acting with deliberate indifference to the constitutional rights of Plaintiff in order to avoid causing the injuries and damages alleged herein.

31. Defendant Officers violated Plaintiff's 4th amendment rights and objectively unreasonable force against PLAINTIFF when handcuffing Plaintiff. There acts were in compliance with Defendant El Paso Police Department's deficient actual policies, procedures, practices, and customs relating to (1) arrests without probable cause, (2) violating the constitutional rights of its residents by seizing them without probable cause, and (3) with the attitude of guilty by association.

32. Additionally, El Paso Police Department turned a blind eye to these constitutional deprivations by providing its officers with much too broad discretion in determining what amount of force to use and whether to subject citizens to searches in violation of their constitutional rights and it is and was foreseeable that these deficient actual policies, procedures, practices and customs would result in incidents like the one giving rise to this lawsuit.

33. The deficient actual policies, procedures, practices and customs set out above are caused by and amount to the conscious disregard of and deliberate indifference to the rights of Plaintiffs to be free from unreasonable seizures and excessive force.

34. Finally, Defendant El Paso Police Department's deficient actual policies, procedures, practices and customs relating to the use of unlawful search and excessive force are a producing and proximate cause of Plaintiff's damages.

35. Defendant El Paso Police Department retained Defendant police officers, where El Paso Police Department had actual, or at least constructive, knowledge of their propensity for the abuse of

citizens and police misconduct, including the use of unlawful seizure and excessive force.

36. Defendant El Paso Police Department breached their duty to provide Defendants officers with adequate supervision. The grossly inadequate supervision resulted from and was caused by Defendants El Paso Police Department's deliberate indifference to the rights of Plaintiffs not to be subjected to unlawful search and seizure and excessive force. Finally, the grossly inadequate supervision is a producing and proximate cause of Plaintiff's damages.

37. Plaintiff is further informed and believes that, El Paso Police Department never investigates or disciplines its officers for continual violations of citizens' constitutional rights. Plaintiff believes that the violation of their rights was not an isolated incident but are regular and occurring and are daily occurrences.

## DAMAGES

38. As a direct and proximate result of defendants' wrongful conduct, plaintiff suffered the following injuries and damages:

   a. Violation of his constitutional rights under the Fourth, Eight, and Fourteenth Amendments to the United States Constitution;

   b. Physical injuries and pain and suffering as a result of excessive force;

   c. Violations of the following clearly established and well-settled federal constitutional rights include but are not limited to: (1) freedom from unreasonable search and seizure of their persons under the Fourth Amendment to the United States Constitution; and, (2) right to equal protection under the Fourteenth Amendment to the United States Constitution;

   d. The conduct of named defendant police officers, were malicious, wanton and oppressive. Plaintiff is therefore entitled to an award of punitive damages against said

defendants and,

## PRAYER

WHEREFORE, plaintiff prays for judgment against the Defendants, as follows:

1. For general damages for the minimum

2. For special damages according to proof;

3. For punitive damages against the named individual defendants, according to proof;

4. For reasonable attorney's fees pursuant to 42 U.S.C. Sections 1983 and 1988;

7. For costs of suit herein incurred; and,

8. For such other and further relief as the Court deems just and proper.

## JURY DEMAND

Plaintiff hereby demands a trial by jury of all issues so triable.

Dated: May 19, 2021

By: Jonathan Vega

(915)701-1301

Jeagle1420@gmail.com

1213 Rubye Mae Place,

El Paso, Texas 79912

*[signature] 5-20-21*

PRO-SE