# UNITED STATES DISTRICT COURT
## WESTERN DISTRICT OF TEXAS
## EL PASO DIVISION

| | | |
|---|---|---|
| **JONATHAN VEGA,** | § | |
| | § | |
| *Plaintiff,* | § | |
| v. | § | **EP-21-CV-00116-DCG** |
| | § | |
| **CITY OF EL PASO,** *a governmental entity,* | § | |
| **LUIS A. MARTINEZ #3149,** *individually*, | § | |
| **FRED ARIAS #1025,** *individually*, | § | |
| **DOMINIC CHACON #2893,** *individually*, | § | |
| **and DOES 1 THROUGH 10,** *inclusive.* | § | |
| | § | |
| *Defendants.* | § | |

## REPORT AND RECOMMENDATION OF MAGISTRATE JUDGE

Before the Court is "Defendant Officer Martinez' Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support Thereof," filed by Defendant Officer Luis A. Martinez ("Martinez") on August 14, 2021 (ECF No. 26), "Defendant Officer Fred Arias' Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint," filed by Defendant Officer Fred Arias ("Arias") on August 16, 2021 (ECF No. 27), and Defendant Officer Chacon's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support Thereof," filed by Defendant Officer Dominic Chacon ("Chacon") on August 26, 2021 (ECF No. 32) (together "Defendants' Motions")[1]. The matter was referred to this Court pursuant to 28 U.S.C. § 636(b) and Rule 1(d) of Appendix C of the Local Rules of the United States District Court for the Western District of Texas for a Report and Recommendation ("R&R") on August 30, 2021, by United States District Judge David C. Guaderrama. (ECF No. 33).

---

[1] Plaintiff also names Defendants "DOES 1 through 10" in his Amended Complaint. (ECF No. 19). However, the Court will only address the Defendants relevant to the instant motions.

For the reasons set forth below, the Court **RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED IN PART** and **DENIED IN PART**.

## I.      INTRODUCTION

This is a civil rights suit pursuant to 42 U.S.C. § 1983, arising from injuries and damages suffered by Plaintiff Jonathan Vega ("Plaintiff") during an incident at his residence on May 21, 2019, at about 1:38 p.m in El Paso, Texas. (ECF No. 1, p. 1–2). Defendant Luis A. Martinez #3149 ("Defendant Martinez" or "Martinez") and Defendant Fred Arias #1025 ("Defendant Arias" or "Arias") were individuals residing in El Paso County, Texas and employees of the City of El Paso as members of the El Paso Police Department. *Id*. at 2. Defendant Dominic Chacon #2893 ("Defendant Chacon" or "Chacon") was also an individual residing in El Paso County, Texas, and also employed by the El Paso Police Department. (ECF No. 19, p. 3).

Plaintiff alleges that, during the execution of an arrest warrant for another individual at his residence, Defendants Martinez, Arias, and Chacon "pushed, shoved, and slammed" Plaintiff into the metal file cabinet. (ECF No. 19, p. 7). As a result of this incident, which also resulted in Plaintiff's arrest, Plaintiff incurred physical injury to his ear, including hearing loss which requires continuing treatment, and psychological damage." (ECF No. 19, p. 12-13).

Plaintiff asserts the following causes of action against Defendants Martinez, Arias, and Chacon pursuant to Section 1983: unlawful search and seizure (unlawful arrest), excessive force, and filing of a false report (judicial deception). (ECF No. 1, p. 2–4; ECF No. 34, p. 9–10). In response, Defendants assert they are entitled to qualified immunity. (ECF Nos. 26, 27, 32).

## II.   BACKGROUND

### A.   Factual Background[2]

In considering a 12(b)(6) motion, "the plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer v. Prudential Securities, Inc.*, 94 F.3d 189, 194 (5th Cir. 1996). The following facts are therefore taken from the Plaintiff's pleadings. On May 21, 2019, two undercover El Paso Police Department officers, Defendant Arias and Officer Aldaba, arrived at Plaintiff's residence.[3] (ECF No. 19, p. 5). The officers were there to execute an arrest warrant for fraud on Plaintiff's roommate, who is identified in the Amended Complaint only as "Robert (Rj)" or "Robert". *Id.* Defendant Arias showed Plaintiff his police badge and inquired as to Robert's whereabouts. *Id.* Plaintiff responded that he thought Robert had left the premises with his girlfriend about thirty (30) minutes prior to the officers' arrival. *Id.* Defendant Arias then asked Plaintiff if he was sure that Robert was not on the property and warned Plaintiff that if Robert was found there that Plaintiff would be in "big trouble." *Id*. At this point, Plaintiff consented to Defendant Arias and Officer Aldaba entering the apartment premises. (ECF No. 19, p. 6). Defendant Arias then instructed Plaintiff to check around the apartment for Robert once more. *Id*. As Plaintiff headed back towards the office after checking Robert's room, "he heard a loud noise coming from within [Plaintiff's] bedroom closet." *Id*. Consequently, "[he] immediately informed Defendant Arias and the other undercover officers that someone was inside his closet and offered to provide the keys to the closet and go unlock it for them." *Id*.

Plaintiff was told to stay in the office with Officer Aldaba while Defendant Arias unlocked

---

[2] While recounting the factual background, the Court addresses only the facts relevant to the immediate Report and Recommendation.

[3] The Plaintiff's residence is also his place of employment. Specifically, the Plaintiff was residing at a self-storage facility on the Westside of El Paso, Texas, where he also worked. (ECF No. 19, p. 9).

the bedroom closet with the keys Plaintiff had given him, where he found Robert hiding inside. *Id*. Simultaneously, Defendant Martinez entered the office, and Officer Aldaba ordered Defendant Martinez to stay with Plaintiff while she went to help Defendant Arias extract Robert from the closet. *Id.*. During this time, Defendant Chacon walked into the office as well, and Defendant Martinez informed him where the other officers were while Defendant Martinez stayed with Plaintiff. *Id*. Defendant Arias told Defendant Chacon to remain in the office with Defendant Martinez and Plaintiff. (ECF No. 19, p. 7).

Defendant Chacon then "instructed [Plaintiff] to turn around as both Defendants Martinez and Chacon grabbed and held [Plaintiff] aggressively to arrest and detain him." *Id*. "Defendant Martinez started to handcuff [Plaintiff] without probable cause," and "[Plaintiff] began asking why he was under arrest?" *Id*. Defendant Chacon told Plaintiff to stop resisting arrest, and "[Plaintiff], who was being held by both Defendants Martinez and Chacon, [was] then pushed, shoved, and slammed into the nearby metal file cabinet by both officers." *Id*. This caused Plaintiff to fall to the floor due to the impact, and also caused both Defendants to fall onto him. *Id*.[4]

As a result of this push and fall, Plaintiff injured his ear and required twelve stiches at the hospital, and furthermore visited a specialist who confirmed he has hearing loss in the injured ear and needs surgery or a hearing aid to remedy this damage. (ECF No. 19, 11-13). Plaintiff also claims continued psychological and associated ailments including depression, acute stress disorder, and post-traumatic stress. (ECF No. 19, 13).

---

[4] Plaintiff also submitted video footage exhibits in support of his pleadings, to which he refers several times in his complaint. For purposes of the Court's analysis, the Court refers only to the Plaintiff's representations in his Amended Complaint of what the videos purport to show. The Plaintiff avers at Paragraph 25 that one of the videos he submitted demonstrates he "did not at all resist arrest." (ECF No. 19, p. 7). Further, the Plaintiff asserts that the video shows blood stains on the file cabinet caused by officers slamming his head against it. *Id.*

### B.   Procedural Background

On August 2, 2021, Plaintiff Jonathan Vega filed the "First Amended Complaint for Violation of Civil Rights," alleging claims of unlawful search and seizure, unlawful/false arrest, excessive force, and filing a false police report and judicial deception against Defendants Martinez, Arias, and Chacon. (ECF No. 19). On August 14, 2021, Defendant Martinez filed a "Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support Thereof." (ECF No. 26). On August 16, 2021, Defendant Arias filed a "Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint." (ECF No. 27). Finally, on August 26, 2021, "Defendant Chacon's Motion to Dismiss Plaintiff's First Amended Complaint and Brief in Support Thereof" was filed. (ECF No. 32). These Motions to Dismiss were referred to United States Magistrate Judge Miguel A. Torres for a Report and Recommendation on August 30, 2021. (ECF No. 33). On the same day, Plaintiff filed a "Response in Opposition to Motion[s filed by Defendants Martinez, Arias, and Chacon]" ("Plaintiff's Response"). (ECF No. 34). On September 20, 2021, Defendants Chacon, Martinez, and Arias filed a "Reply to Response to Motion" to support their Motions to Dismiss. (ECF No. 38, 39, 40 respectively). The Court considers all of these pleadings in the instant Report and Recommendation.

### III.   LEGAL STANDARD

### A.   12(b)(6) Motion to Dismiss

A motion to dismiss under Federal Rules of Civil Procedure 12(b)(6) challenges the sufficiency of a pleading to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion to dismiss, "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). In considering the motion, "the

plaintiff's complaint is to be construed in a light most favorable to the plaintiff, and the allegations contained therein are to be taken as true." *Oppenheimer*, 94 F.3d at 194. "The dismissal will not be upheld unless it appears beyond doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Mitchell v. McBryde*, 944 F.2d 229, 230 (5th Cir. 1991) (citing *Rankin v. City of Wichita Falls,* 762 F.2d 444, 446 (5th Cir. 1985)) (internal quotations omitted). However, the court may not look beyond the complaint to determine whether the plaintiff has stated a legally cognizable claim. *Spivey v. Robertson*, 197 F.3d 772, 774 (5th Cir. 1999).

### B.      Qualified Immunity

It is well-settled that a "government official performing discretionary functions is entitled to qualified immunity unless his conduct violates clearly established statutory or constitutional rights of which a reasonable person would have known." *Bush v. Strain*, 513 F.3d 492, 500 (2008); *see Lincoln v. Turner*, 874 F.3d 833, 847 (5th Cir. 2017) (protecting government officials from liability "so long as their conduct 'does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'") (internal citations omitted).

To overcome a qualified immunity defense, a plaintiff must plead facts showing (1) that the official violated a statutory or constitutional right, and (2) that the right was clearly established at the time of the challenged conduct. *Jackson v. City of Hearne, Texas*, 959 F.3d 194, 200 (5th Cir. 2020) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 735 (2011)) (explaining that "lower courts have discretion to decide which of the two prongs of [the qualified immunity] analysis to tackle first."). To be clearly established, a right must be sufficiently clear that every reasonable official would have understood that what he is doing violates that right. In other words, existing precedent must have placed the statutory or constitutional question beyond debate." *Id.* at 200-01 (internal

citation omitted) (quoting *Reichle v. Howards*, 566 U.S. 658, 664 (2012)).

Further, it is the plaintiff's burden to establish a constitutional violation and overcome a [qualified immunity] defense. *Id.* at 201 (citing *McClendon v. City of Columbia*, 305 F.3d 314, 323 (5th Cir. 2002) (en banc) (per curiam)). To meet this burden, "the plaintiff 'must plead specific facts that both allow the court to draw the reasonable inference that the defendant is liable for the harm he has alleged and that defeat a [qualified immunity] defense with equal specificity.'" *Id.* (quoting *Backe v. LeBlanc*, 691 F.3d 645, 648 (5th Cir. 2012)); *see Nunez v. Simms*, 341 F.3d 385, 388 (5th Cir. 2003) (stating that plaintiffs must "rest their complaint on more than conclusions alone and plead their case with precision and factual specificity").

## IV.    DISCUSSION

### A.    <u>Plaintiff's First Cause of Action: Unlawful Search, Seizure, and Arrest</u>[5]

1.    <u>Plaintiff's claims for unlawful search, seizure, and arrest are conclusory and fail to plead with the specificity required to state a colorable claim for relief.</u>

Plaintiff alleges the "named Defendants seized, searched, arrested, and handcuffed the Plaintiff without any probable cause to seize Plaintiff in violation of his Fourth Amendment rights." (ECF No. 19, p. 14). However, this is merely a conclusory statement that appears to allege a claim for "unlawful search and seizure" ("seized, searched") and a claim for "unlawful/false arrest" ("arrested, and handcuffed"). *Id.* Problematically, Plaintiff provides no further facts to directly support these positions by law or the instant record. *See Ashcroft*, 556 U.S. at 678 ("a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

---

[5] Plaintiff's Amended Complaint combines the unlawful arrest and excessive force claims under the heading "First Cause of Action." (ECF No. 19, p. 13). However, for purposes of clearer analysis the Court divides these disparate causes of action into separate claims, the first cause of action being unlawful arrest, and the second cause of action being excessive force. Thus, the third cause of action herein is that of false police report and judicial deception, alleged as "Second Cause of Action" in Plaintiff's Amended Complaint. *Id.* at 15.

plausible on its face.'"). Therefore, the Court finds that Plaintiff fails to plead a sufficient factual basis for his claims of unlawful search, seizure, and arrest.

2.  <u>Plaintiff's claims of unlawful search and seizure are insufficient to overcome Defendants' qualified immunity defense because Plaintiff consented to Defendants entering the residence.</u>

Defendants individually argue, as set forth below, that they are entitled to qualified immunity on Plaintiff's claims for unreasonable search and seizure. Defendants base their reasoning on the fact that Plaintiff consented to the search of the residence, along with their entry into the residence with an arrest warrant for Robert, who they reasonably believed to be there.

It is a basic tenet of Fourth Amendment law that a warrantless search is presumptively unreasonable. *United States v. Jaras*, 86 F.3d 383, 388 (5th Cir. 1996); *see also United States v. Aguirre*, 664 F.3d 606, 610 (5th Cir. 2011). However, Courts have routinely held that searches to which consent has been granted are reasonable. *United States v. Carbajal*, 883 F. Supp. 148, 151 (W.D. Tex. 1995); *see Schneckloth v. Bustamonte,* 412 U.S. 218, 219 (1973). "The State has the burden of proving that consent was freely and voluntarily given . . . "[t]his burden is not satisfied by a mere submission to a claim of lawful authority." *Carbajal*, 883 F. Supp. at 151; *see Florida v. Royer,* 460 U.S. 491, 497 (1983) (plurality opinion). Additionally, "[t]he authority of law enforcement to enter a home to execute a valid arrest warrant depends on whether the subject of the arrest warrant resides at and is presently within a particular residence. *Francis v. Cty.*, No. CV H-14-2943, 2016 WL 6662275, at *7 (S.D. Tex. Nov. 10, 2016), <u>aff'd sub nom.</u> <u>Francis v. Garcia</u>, 702 F. App'x 218 (5th Cir. 2017); *see Payton v. New York*, 445 U.S. 573, 574 (1980). "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within." *Id.*

The Court will address the merits of each Defendant's qualified immunity defenses in turn.

*a)      Defendant Arias*

First, Defendant Arias argues that "[t]o the extent Plaintiff's complaint is that Officer Arias searched or seized Plaintiff's residence, dismissal is warranted because Plaintiff gave El Paso law enforcement, including Officer Arias, consent to enter his building and, once inside, Plaintiff offered to provide the keys to his bedroom closet (where it was discovered that Robert was hiding) prior to Officer Arias unlocking the closet door." (ECF No. 27, p. 6-7). Defendant Arias maintains that he "entered the premises and unlocked the closet door with Plaintiff's consent and permission." Further, in his Amended Complaint, Plaintiff refers to video evidence showing Plaintiff giving consent for Defendants to look around the residence. (ECF No. 19, p. 8).

Although Plaintiff alleges that Defendant Arias was dressed in "undercover" clothes when he met Plaintiff at the door (ECF No. 34, p. 2), Defendant Arias later returned alone to the door and identified himself by showing Plaintiff his police badge. *Id.* at 3. Plaintiff was aware that Defendant Arias and his companion were police officers when he stated he "gave permission for them to enter the building." (ECF No. 19, p. 6). Additionally, Defendant Arias asked for Robert's whereabouts and "then asked [Plaintiff] if [he] was sure that [Robert] was not on the property before warning that if Robert (Rj) was found to be present that [Plaintiff] would be in big trouble." *Id.* at 5. Clearly, Defendant Arias entered the premises with consent and with an arrest warrant for Robert, expecting to find Robert at that location. Moreover, it is not in dispute that Plaintiff understood that this was Defendant Arias's intention. Therefore, Plaintiff's claim that Defendant Arias unlawfully searched and seized the residence fails because Plaintiff cannot show a constitutional violation in light of Plaintiff's consent. *See Rhodes v. Prince*, 36 App'x 555,558 (5th Cir. 2010) ("If we determine that no constitutional violation occurred, our [qualified immunity]

inquiry ends.").

        *b)*     *Defendant Chacon*

Similarly, Defendant Chacon argues that "[t]o the extent Plaintiff's complaint is that Officer Chacon searched or seized Plaintiff's residence, dismissal is warranted." (ECF No. 32, p. 7). Defendant Chacon reasons that "Plaintiff gave law enforcement consent to enter his building, offered to provide the keys to his closet and voluntarily handed the closet keys to the police," and furthermore "Officer Chacon had no involvement in the search of the building." *Id.* This Defendant points out that he simply ". . . walked into the office and Defendant Martinez informed him of where the other officers were located." (ECF No. 32, p. 8). In sum, Defendant Chacon contends that Plaintiff's allegations should be dismissed because "Plaintiff alleged no personal involvement or actual participation in the alleged consensual search or seizure by Officer Chacon." *Id.*

Notably, Plaintiff's first references to Defendant Chacon also align with this Defendant's facts: "During that time Defendant Dominic Chacon walked into the office and Defendant Martinez informed him of where the other officers were located while Defendant Martinez stayed with [Plaintiff] in the office." (ECF No. 19, p. 6) (ECF No. 34, p. 4). Plaintiff's First Amended Complaint further details that "Defendant Arias had just arrested and handcuffed Robert (Rj) and walked into the hallway as Defendant Chacon had just entered the apartment before Defendant Arias told Chacon to go back into the office where defendant Martinez and Jonathan were located." (ECF No. 19, p. 7). Accordingly, Defendant Chacon thus had consent to be in the residence, as the officer who received initial consent—Defendant Arias—ordered him to remain in the office. Therefore, the facts contained in Plaintiff's Complaint do not support a claim for unlawful search or seizure against Defendant Chacon. Thus, the Court finds

that Plaintiff has failed to state a constitutional violation by Defendant Chacon, and therefore he is entitled to qualified immunity.

<em>c)     Defendant Martinez</em>

Finally, Defendant Martinez also states that "[t]o the extent Plaintiff's complaint is that Officer Martinez searched or seized Plaintiff's residence, dismissal is warranted." (ECF No. 26, p. 7). In support of this contention, Defendant Martinez argues that "Plaintiff gave law enforcement consent to enter his building, offered to provide the keys to his closet, and voluntarily handed the closet keys to the police." *Id.* As such, Defendant Martinez argues that he "had no involvement in the search of the building." *Id.* Defendant Martinez furthermore explains that he "entered the office, where he was told by Officer Aldaba 'to stay with Jonathan while the other officer followed [Officer Aldaba] into the apartment.'" (ECF No. 26, p, 8).

Here, the Court notes that Plaintiff alleges that Defendant Martinez had consent to be in the office, as Plaintiff gave Officer Aldaba consent to enter, and she in turn directed Defendant Martinez to remain. (ECF No. 19, p. 5-6); (ECF No. 19, p. 6). Plaintiff in turn fails to plead any specific facts to support a claim that Defendant Martinez violated any of Plaintiff's constitutional rights to be free from unlawful search and seizure. Thus, the Court finds that Defendant Martinez is entitled to qualified immunity with respect to this claim.

Thus, the Court will **RECOMMEND** Defendants Martinez, Arias, and Chacon's Motions to Dismiss Plaintiff's claims for unlawful search and seizure be **GRANTED**.

3.     <u>Plaintiff's claims of unlawful/false arrest are insufficient to defeat Defendants' qualified immunity defense because Plaintiff fails to sufficiently plead that Plaintiff was arrested without probable cause.</u>

In order to prevail on a Section 1983 claim for false arrest, a plaintiff must show that he was arrested without probable cause in violation of the Fourth Amendment. *Brown v. Lyford,* 243

F.3d 185, 189 (5th Cir.2001) (citations omitted). "Probable cause exists where the facts and circumstances within the officer's knowledge at the time of the arrest 'are sufficient for a reasonable person to conclude that the suspect had committed or was committing an offense.'" *Freeman v. Gore*, 483 F.3d 404, 413 (5th Cir. 2007) (quoting *Flores,* 381 F.3d at 402); *see United States v. Levine,* 80 F.3d 129, 132 (5th Cir.1996). The Fifth Circuit applies an objective standard meaning Court will find probable cause existed if the officer was aware of facts justifying a reasonable belief that an offense was being committed, whether or not the officer charged the arrestee with that specific offense. *See* <u>Club Retro, L.L.C. v. Hilton</u>, 568 F.3d 181, 204 (5th Cir. 2009) (citing *Devenpeck v. Alford,* 543 U.S. 146, 153–54 (2004)). Here, Plaintiff simply alleges that "Defendant Martinez then started to handcuff [Plaintiff] without probable cause," and "The security videos . . . show the arrest of [Plaintiff] without probable cause . . ." (ECF No. 19, p. 7). Thus, Plaintiff's references to the alleged unlawful arrest remain conclusory and fail to allege any specific facts throughout.

Moreover, Plaintiff cannot demonstrate a constitutional violation with the rubric of unlawful arrest. By contrast, Defendant Martinez argues that probable cause existed to arrest Plaintiff for "harboring or concealing Robert, or providing means of Robert avoiding arrest," both of which are elements of Hindering Apprehension pursuant to the Texas Penal Code § 38.05(a)[6]. (ECF No. 26, p. 9). Defendant Martinez posits that the "Plaintiff was ultimately arrested for resisting arrest and hindering apprehension or prosecution."[7] *Id*. He also maintains that "probable

---

[6] Texas Penal Code Annotated section 38.05(a), Hindering Apprehension, provides: a person commits an offense if, with intent to hinder the arrest, prosecution, conviction, or punishment of another for an offense or, with intent to hinder the arrest, detention, adjudication, or disposition of a child for engaging in delinquent conduct that violates a penal law of the state, or with intent to hinder the arrest of another under the authority of a warrant or capias, he:
(1) harbors or conceals the other;
(2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or
(3) warns the other of impending discovery or apprehension.
[7] "The resisting arrest charge was dismissed against Plaintiff on June 30, 2021. However, the hindering apprehension or prosecution is still pending in the State court." (ECF No. 26, p. 9).

cause 'deals with probabilities and depends on the totality of the circumstances," and that here the totality required to overcome the probable cause threshold was present to "lawfully arrest the Plaintiff for hindering apprehension or prosecution and resisting arrest." (ECF No. 39, p. 5-6) (citing *Maryland v. Pringle*, 540 U.S. 366, 371 (1996)). Similarly, Defendant Chacon also argues that the "arrest of the Plaintiff was not unlawful as probable cause existed that [Plaintiff] was harboring and concealing Robert, or providing means of Robert avoiding arrest. (ECF No. 32, p. 9-10). Defendant Chacon reasons that "[u]ltimately, Robert was found in the Plaintiff's closet, while the Plaintiff told officers that he thought Robert (Rj) left with his girlfriend." (ECF No. 38, p. 4). Defendant Arias does not make any arguments in relation to the legal issue of unlawful/false arrest.

Considering that the Defendants intended to execute an arrest warrant on Robert— who they presumed would be within the residence— whom they found Robert hiding within Plaintiff's own locked closet— the Court finds that a reasonable person could conclude that Plaintiff was attempting to conceal Robert from the officers. Defendants Martinez, Arias, and Chacon plausibly reached the same conclusion after finding Robert in Plaintiff's closet, and thereby reasonably assessed probable cause existed to arrest Plaintiff. Therefore, the Court finds that Plaintiff has failed to show that he was arrested without probable cause in violation of the Fourth Amendment and cannot prevail on a Section 1983 claim for false arrest.

Thus, the Court will **RECOMMEND** Defendants Martinez, Arias, and Chacon's Motions to Dismiss Plaintiff's claims for unlawful/false arrest be **GRANTED**.

### B.     Plaintiff's Second Cause of Action: Excessive Force

#### 1.     Law Regarding Excessive Force

Plaintiff alleges that Defendants violated his Fourth Amendment rights when they used

excessive force while arresting him. Excessive force claims brought under 42 U.S.C. § 1983 are not all governed by a uniform, generic standard. *Graham v. Connor*, 490 U.S. 386, 394 (1989). Where an "excessive force claim arises in the context of an arrest or investigatory stop of a free citizen, it is most properly characterized as one invoking the protections of the Fourth Amendment," which guarantees the right to be secure against unreasonable seizures. *Id*. To state a claim for excessive force under the Fourth Amendment, a Plaintiff must "first allege facts capable of showing that they suffered a seizure." *See Flores v. City of Palacios,* 381 F.3d 391, 396 (5th Cir. 2004) (internal citation omitted). Next, Plaintiff must sufficiently plead three elements: (1) an injury, (2) resulting directly and only from the use of force that was excessive to the need, and (3) the use of force was objectively unreasonable. *Bush*, 513 F.3d at 501.

2. <u>Plaintiff has demonstrated that Defendants Martinez and Chacon effected a seizure under the Fourth Amendment when they arrested him.</u>

Plaintiff has plead sufficient facts to show that he suffered a seizure. "An officer seizes a person when he, 'by means of physical force *or* show of authority, has in some way restrained the liberty of a citizen.'" *Flores*, 381 F.3d at 396 (quoting *Terry v. Ohio,* 392 U.S. 1, 19 n. 16 (1968)) (emphasis in original). Here, the Court will analyze whether Plaintiff has satisfied this requirement of excessive force as to each Defendant in turn.

a) *Defendant Martinez*

Plaintiff has plead sufficient facts to show Defendant Martinez seized him. As pled by Plaintiff, "Defendants Martinez and Chacon grabbed and held [Plaintiff] aggressively to arrest and detain him . . . Defendant Martinez then started to handcuff [Plaintiff] without probable cause." (ECF No. 19, p. 7). Plaintiff directly names Defendant Martinez as the arresting officer. Given that an arrest constitutes a seizure under the Fourth Amendment, it follows that Defendant Martinez seized plaintiff. Thus, Plaintiff has stated a plausible claim for seizure against this Defendant.

*b)*        *Defendant Chacon*

Plaintiff has furthermore plead sufficient facts to show that Defendant Chacon seized him. Again, Defendant Chacon "grabbed and held [Plaintiff] aggressively to arrest and detain him…" (ECF No. 19, p. 7). The allegation that Defendant Chacon grabbed and held Plaintiff shows that this Defendant restrained Plaintiff's liberty by physical force, effecting a seizure. Thus, Plaintiff has stated a plausible claim for seizure against Defendant Chacon.

*c)*        *Defendant Arias*

Plaintiff has not plead sufficient facts to show that Defendant Arias seized him. Plaintiff fails to plead any facts to support finding that Defendant Arias detained or arrested Plaintiff, or in some other way restrained his liberty. Therefore, Plaintiff has failed to state a plausible claim for seizure against Defendant Arias, and thus an excessive force claim under 42 U.S.C. § 1983 against this Defendant fails early at this first step.

3.        <u>Plaintiff has sufficiently pled the three elements of an excessive force claim against Defendants Martinez and Chacon.</u>

*a)        Element 1: Plaintiff has demonstrated that he suffered an injury.*

Plaintiff sufficiently pleads that he sustained physical and psychological injury while being seized by Defendants Martinez and Chacon. While there is no bright line rule regarding extent of injury, courts have held that it must be more than *de minimis. See Glenn v. City of Tyler*, 242 F.3d 307, 314 (5th Cir. 2001) (asserting that the injury must simply be more than *de minimis* "evaluated in the context in which the force was deployed.") (internal citations omitted); *see also Deville v. Marcantel*, 567 F.3d 156, 168 (5th Cir. 2009) (concluding that injury from handcuffs applied so tightly that Plaintiff had nerve damage requiring four surgeries was not *de minimis*). Moreover, the degree of injury necessary is "directly related to the amount of force that is constitutionally permissible under the circumstances." *Alexander v. City of Round Rock*, 854 F.3d 298, 309 (5th

Cir. 2001). Plaintiff pleads that as a result of being "pushed, shoved, and slammed into the nearby metal file cabinet by both officers" during the course of an arrest for non-violent charges (ECF No. 19, p. 7), Plaintiff's ear was "ripped apart in two" and bled profusely. (ECF No. 19. p. 8). Consequently, Plaintiff required "12 stitches at the hospital due to his injury" *Id.* at 11. Furthermore, the claims psychological injures, such as a diagnosis of depression, high blood pressure, acute stress disorder, and post-traumatic stress. *Id.* at 13. As pled, Plaintiff's injuries were more than *de minimis*, and thus he has sufficiently stated a claim for a cognizable injury herein.

> b)      *Element 2: Plaintiff has demonstrated that his injury resulted directly from the alleged excessive force that was excessive to the need.*

Plaintiff sufficiently pleads that his injuries resulted directly from the force of Defendants Martinez and Chacon pushing him into the metal file cabinet while Plaintiff was not resisting. "It is clearly established in the Fifth Circuit that even the use of relatively minor force, such as 'pushing, kneeing, and slapping' is excessive when deployed against 'a suspect who is neither fleeing nor resisting arrest.'" *Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) (collecting cases). Further "the extent of [the] injury inflicted 'may be considered in determining whether the officers used excessive force.'" *Deville*, 567 F.3d at 168 (quoting *Whitley v. Albers,* 475 U.S. 312, 321 (1986)); *see also Ikerd v. Blair*, 101 F.3d. 430, 434  (5th Cir. 1996) .

Plaintiff alleges that, "[f]rom the impact, the file cabinet was covered in blood where [Plaintiff] had made contact with it and his ear continued to bleed. Both Defendants [Martinez and Chacon] noticed [Plaintiff's] ear had been ripped apart in two…" (ECF No. 19, p. 8). Plaintiff further maintains that he did not resist the arrest for non-violent charges while surrounded by two officers (ECF No. 19, p. 7-8). As such, Plaintiff was not posing an immediate threat to the safety of the officers or others, nor was he actively resisting arrest or attempting to evade arrest. In sum,

Plaintiff's statements, assuming them to be true, sufficiently create the required causal nexus between Defendants' force in pushing and shoving Plaintiff —which was excessive to the need at hand-- and Plaintiff's injuries, such that Plaintiff has plausibly established this element of excessive force.

> c)   *Element 3: Plaintiff has demonstrated that Defendants Martinez's and Chacon's use of force was objectively unreasonable in this situation.*

Plaintiff has sufficiently shown that Defendants' Martinez and Chacon use of force was unreasonable under the circumstances presented. "In gauging the objective reasonableness of the force used by a law enforcement officer, [courts] must balance the amount of force used against the need for that force." *Ikerd*, 101 F.3d at 343. Courts may consider three factors in determining whether a particular use of force was reasonable or excessive to the need: 1) the severity of the crime, 2) whether the suspect posed an immediate threat to civilians or law enforcement, and 3) whether the suspect was actively resisting or evading arrest by attempting to flee the scene. *Graham*, 490 U.S. at 396 (1989); *Khansari v. City of Houston*, 14 F.Supp.3d 842, 853 (S.D. Tex. 2014).

In the instant matter, Plaintiff has alleged that he was not resisting arrest, that he was not attempting to flee, and that he had been entirely cooperative with law enforcement officers whose initial mission was not to arrest Plaintiff. (ECF No. 19, p. 7-8). The Court further notes that there is no indication that Plaintiff was armed with any type of potentially dangerous object.  In fact, the only action Plaintiff alleges he took while being arrest was trying to face Defendant Chacon to ask why he was being arrested. (ECF. 19, p. 8). This minor action of turning around during an arrest on non-violent charges is not commensurate with Defendant Chacon's and Martinez's force employed in pushing and shoving Plaintiff. Thus, the Court finds that Plaintiff has sufficiently pled

that Defendant Martinez's and Chacon's use of force was objectively unreasonable under the circumstances.  Thus, under the facts alleged in the Complaint, Plaintiff has stated a claim that Defendants Martinez and Chacon violated his Fourth Amendment rights by using excessive force against him.

> 4.   Plaintiff has sufficiently alleged a constitutional violation with respect to excessive force that overcomes Defendants Martinez's and Chacon's qualified immunity defense.

Beyond establishing the requisite elements of a claim for excessive force, Plaintiff must also state facts sufficient to overcome qualified immunity.  To do so, Plaintiff must show that the official violated a constitutional right, and that the constitutional right was clearly established at such time.  First, Plaintiff's allegations, taken as true, allow a reasonable inference that Defendants Martinez's and Chacon's use of force was unreasonable, which is a violation of a constitutional right.  Second, that constitutional right was clearly established at the time.   Plaintiff had a clearly established right to be free from excessive force when the arrest occurred. *See Deville*, 567 F.3d at 169 (citing *Tarver v. City of Edna*, 410 F.3d 745, 753–54 (5th Cir. 2005)). Furthermore, it is clearly established that the amount of force Defendants could use depended on the severity of the crime, whether Plaintiff posed a threat, and whether Plaintiff was attempting to resist or flee. *See id.* (citing *Bush*, 513 F.3d at 502). Under Plaintiff's account of events, he was not resisting arrest or attempting to flee when Defendant Martinez and Defendant Chacon forcefully pushed, shoved, and slammed Plaintiff into a nearby metal file cabinet, causing significant injuries. The Court notes such force was not reasonable where Plaintiff consented to having them enter the premises, offered keys to his closet, attempted to cooperate with the officers, and never resisted or evaded arrest. Therefore, Plaintiff has pled sufficient facts to defeat qualified immunity  on this excessive force claim.

The Court will **RECOMMEND** Defendants Martinez and Chacon's Motions to Dismiss Plaintiff's claims of excessive force be **DENIED**. The Court will further **RECOMMEND** Defendant Arias's Motion to Dismiss Plaintiff's claim of excessive force be **GRANTED**.

    C.    <u>**Plaintiff's Third Cause of Action: False Report & Judicial Deception.**</u>

        1.    <u>Plaintiff fails to plead facially plausible claims for relief for false police report and judicial deception.</u>

Plaintiff fails to state a sufficient claim for relief with regard to his false report and judicial deception claims. Instead, Plaintiff provides mere legal conclusions that do not cure his lack of factual merit. As a preliminary matter, this Court is presented with the challenge of distinguishing which facts pertain to which claims alleged by the Plaintiff under this third cause of action.

First, Plaintiff alleges that there exists a "clearly established due process right not to be subjected to false accusations on the basis of false evidence that was deliberately fabricated by the government, such that a reasonable agent in Defendant's situation would know, or should know, that it is unlawful to lie, fabricate evidence, and/or suppress material exculpatory evidence in incident/police reports or any other document to be filed with the El Paso Police Department." (ECF No. 19, p. 15). Based on a generalized reference to the Fourteenth Amendment and associated "substantive due process" in a subheading under this cause of action, Plaintiff appears to allege that Defendants Arias and Chacon— but not Defendant Martinez— infringed upon his "substantive due process" right to "save Defendants Chacon, Martinez, and Arias from liability." *Id*.

Specifically, Plaintiff alleges that "Chacon fabricated the facts in the Incident report and Arias signed the Incident report that [Plaintiff] was the problem and the officers did nothing wrong." *Id*. Plaintiff continues that "[t]his was done in an effort to avoid liability for the actions primarily of Defendants Chacon and Martinez, but Defendant Arias knew or should have known

that by presenting a false incident report, it would lead to the deprivation of Plaintiff's civil rights." *Id*. Aside from these legal conclusions, Plaintiff provides no additional argument or authority in his Complaint or in his Response to support his assertion that Defendants Chacon and Arias deprived the Plaintiff of his substantive due process right under the Fourteenth Amendment. The lack of substance is fatal to satisfactorily pled claims.

Plaintiff furthermore mischaracterizes the doctrine of judicial deception in his claim. Specifically, Plaintiff erroneously conflates his false report allegations with an argument about "judicial deception," which is a specific legal term of art unrelated to the theory put forth by Plaintiff. In fact, Plaintiff misinterprets the application of the term of art "judicial deception." Courts considering judicial deception have viewed it as the misleading of a judge to obtain an arrest or search warrant." *Carvajal v. County Clerk*, 539 F. Supp. 3d 1104, (D. Nevada 2021) (citing, respectively, *Smith v. Almada*, 640 F.3d 931, 937 (9th Cir. 2011); *KRL v. Moore*, 384 F.3d 1105, 1117 (9th Cir. 2004)). Here, Plaintiff makes no assertion of Defendants falsifying documents in the procurement or application of warrant from a judicial officer.  In the absence of relevant facts, the Court finds that Plaintiff's theory of a judicial deception cause of action is inapplicable to the facts presented.

2.   <u>Plaintiff furthermore cannot meet his burden under the qualified immunity analysis and thus his claim still fails.</u>

For qualified immunity purposes, Plaintiff cannot show he suffered any consequences implicating his constitutional rights because of the allegedly false incident report. The Fifth Circuit has held that "an inaccurate post-incident report . . . designed to provide probable cause to support a warrantless detention" did not give rise to a Section 1983 claim, nor did it "serve as a continuing constitutional violation." *Rich v. Palko*, 920 F.3d 288, 297 (5th Cir. 2019). Other jurisdictions agree. The First Circuit has held that "the mere filing of the false police reports, by themselves and

without more, did not create a right of action in damages under 42 U.S.C. § 1983." *Landrigan v. City of Warwick*, 628 F.2d 736, 745 (1st Cir. 1980); *see Cruz v. Fulton*, No. 14-2015, 2016 WL 4543613, at *5 (E.D. LA Aug. 31, 2016). In *Landrigan*, the Court reasoned that the focus "should be on the consequences, if any, not on the mere existence of the report." *Landrigan*, 628 F.2d at 745. Similarly, the Eighth Circuit dismissed a 42 U.S.C. § 1983 action based on a law enforcement official's deliberate filing of a false accident report, explaining that the Plaintiff failed to allege how any deprivation of life, liberty, or property flowed from the officials' actions, and the false report. *See Shock v. Tester*, 405 F.2d 852, 855 (8th Cir. 1969).

In the instant case, the Plaintiff also does not provide relevant authority or facts in the record to support a claim that he was deprived of life, liberty, or property as a result of the incident report. Nor do the facts support that conclusion. To the contrary, one of the charges brought against the Plaintiff via the allegedly false incident report, i.e., the charge for resisting arrest was previously dismissed. Therefore, Plaintiff has failed as a matter of law to state a claim under 42 U.S.C. § 1983 for a deprivation of his constitutional rights as a result of an allegedly false incident/police report.

Thus, the Court will **RECOMMEND** Defendants Martinez, Arias, and Chacon's Motions to Dismiss Plaintiff's claims of a false police report and judicial deception be **GRANTED**.

## V.    CONCLUSION

For the foregoing reasons, the Court **RECOMMENDS** that Defendants' Motions to Dismiss (ECF Nos. 26, 27, 32) be **DENIED** to the extent that it seeks dismissal of Plaintiff's claims of excessive force against Defendant Martinez and Defendant Chacon. The Court **RECOMMENDS** that Defendants' Motions to Dismiss be **GRANTED** to the extent that it seeks dismissal of claims for unlawful search and seizure and unlawful/false arrest claims against

Defendants Martinez, Arias, and Chacon; dismissal of a claim of excessive force against Defendant Arias; and dismissal of claims of a false police report and judicial deception against Defendants Martinez, Arias, and Chacon.

**SIGNED** and **ENTERED** this 19<u></u><sup>th</sup> day of January, 2022.

_____
**MIGUEL A. TORRES**
**UNITED STATES MAGISTRATE JUDGE**


## NOTICE

**FAILURE TO FILE WRITTEN OBJECTIONS TO THE PROPOSED FINDINGS, CONCLUSIONS AND RECOMMENDATIONS CONTAINED IN THE FOREGOING REPORT WITHIN FOURTEEN DAYS AFTER BEING SERVED WITH A COPY OF THIS REPORT MAY BAR DE NOVO DETERMINATION BY THE DISTRICT JUDGE OF AN ISSUE COVERED HEREIN AND SHALL BAR APPELLATE REVIEW, EXCEPT UPON GROUNDS OF PLAIN ERROR, OF ANY UNOBJECTED-TO PROPOSED FACTUAL FINDINGS AND LEGAL CONCLUSIONS AS MAY BE ACCEPTED OR ADOPTED BY THE DISTRICT COURT.**