UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TEXAS
EL PASO DIVISION

| | | |
|---|---|---|
| **JONATHAN VEGA**, | § | |
| | § | |
| *Plaintiff*, | § | |
| **v.** | § | |
| | § | |
| **CITY OF EL PASO,** *a Governmental* | § | **EP-21-CV-00116-DCG** |
| *Entity*, **OFFICER LUIS A MARTINEZ** | § | |
| **#3149**, *Individually*, **OFFICER FRED** | § | |
| **ARIAS #1025**, *Individually*, **DOMINIC** | § | |
| **CHACON # 2893**, *Individually*, **and DOES** | § | |
| **1 THROUGH 10**, | § | |
| | § | |
| *Defendants*. | § | |

## MEMORANDUM OPINION AND ORDER

Presently before the Court are Defendant Fred Arias's "Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint" (ECF No. 27), Defendant Dominic Chacon's "Motion to Dismiss Plaintiff's First Amended Complaint" (ECF No. 32), and Defendant Luis Martinez's "Motion to Dismiss Plaintiff's First Amended Complaint" (ECF No. 26). Also before the Court is United States Magistrate Judge Miguel A. Torres's "Report and Recommendation" (ECF No. 41) issued pursuant to 28 U.S.C. § 636(b)(1)(B), wherein the judge recommends dismissal of some, but not all, of the claims asserted in Plaintiff Jonathan Vega's "First Amended Complaint for Violation of Civil Rights" (ECF No. 19) (hereinafter, Amended Complaint).

## I.   BACKGROUND

### A.  Factual Background

In the Amended Complaint, Vega states that the events described therein are based on a review of more than thirty security camera videos captured with audio. Together with his response to the motions to dismiss, Vega has submitted these videos, or excerpts thereof. Below,

the Court recites facts from the complaint as well as facts drawn from some of the videos that the Court has independently reviewed.

Defendants Arias, Martinez, and Chacon (hereinafter, collectively, the Moving Defendants) are police officers employed by the El Paso Police Department.  At the relevant time, Vega was employed by a company located at 7315 Remcon Circle, El Paso, Texas, which is a self-storage facility; Vega was the property manager.  Adjacent to the facility's office is an apartment, whose front door is located inside the office.  Vega worked in the office and resided in the apartment; he had a roommate named Robert.

There were four cameras—three motion activated security cameras and a hidden personal camera—located throughout the office and the apartment.[1]  One of the security cameras was located right above a metal file cabinet inside the office.[2]  As seen in the videos captured by this camera, a lower portion of this camera's view is blocked by the top of the cabinet.

On May 21, 2019, around 1:30 p.m., two undercover agents of the Police Department, later identified as Arias and Carolina Aldaba, arrived in plain clothes at the facility's office to execute an arrest warrant for Robert; he was wanted for "fraud."[3]  After showing his police badge, Arias asked for Robert's whereabouts.[4]  Vega replied that he only knew Robert as "Rj," he was a friend of Robert's girlfriend, and Robert was not at that location; Vega explained that Robert's girlfriend came about thirty minutes earlier and he believed that the two had just left.[5]

---

[1] Am. Compl. at ¶ 33, ECF No. 19.

[2] *Id.*

[3] *Id.* at ¶¶ 16–17, 38.

[4] *Id.* at ¶ 18.

[5] *Id.*

Arias asked Vega if he was sure that Robert was not on the property and warned him that if Robert were to be found on the property, Vega would be in a "big trouble."[6]  After a knock on the front door of Vega's apartment was heard, Arias told Vega to "better go and look around."[7]

At Arias's instruction, Vega went inside Robert's room, but found only Robert's dog.[8] As he was walking back toward the office where the officers were, he heard a loud noise coming from within Vega's bedroom closet.[9]  Vega alerted the officers that someone was inside his closet, and he offered to provide the keys to the closet and to unlock the closet door for them.[10] Vega was instructed to stay in the office.[11]

In a video captured by the security camera located above the metal cabinet in the office, Arias is seen questioning Vega about Robert and Vega is heard answering them (he is not seen in the video); the two are by the cabinet.[12]  When Vega attempts to stand up to get something for the officers (top of his face surfaces in the video), Arias immediately orders him in a loud voice, "don't move, get down, or you gonna go to jail," and a female voice is heard saying, "get down now, . . . get on the ground."[13]  Vega complies with the officers' instructions.[14]

---

[6] *Id.* at ¶ 19.

[7] *Id.*

[8] *Id.* at ¶ 20.

[9] *Id.*

[10] *Id.*

[11] *Id.*

[12] See video file named as "detectives asking where robert was and me offering to give them the keys and open the door for them.mp4" (hereinafter referred to as Video Ex. 1).

[13] *Id.*

[14] *See id.*

At some point, Martinez arrived at the scene.[15]  While Martinez stayed with Vega in the office, other officers (including additional undercover officers who by then had arrived at the scene) went inside the apartment to check Vega's closet.[16]  Using the keys Vega provided, the officers opened the closet door, found Robert hiding inside, and handcuffed Robert.[17]

While Robert was being handcuffed in the bedroom, Chacon arrived at the scene: he entered the office and then went into the apartment.[18]  In a second video captured by the security camera located above the metal cabinet, Chacon is seen returning from the apartment and back to the office, and as he walks toward Vega, Chacon instructs Vega, "stand up, standup."[19]  As Vega stands up (his face is now seen in the video), Chacon tells him, "you wanna interfere?" grabbing Vega's hand.[20]  At this very moment, Martinez is standing right by Vega.[21]  Chacon then orders Vega to turn around toward the metal cabinet.[22]  As Vega is turning around, the two officers are seen making physical contact with his body from his behind.[23]  One of the officers is heard saying "cuff him up."[24]  While Vega stands facing the cabinet with the two officers behind him,

---

[15] Am. Compl. at ¶ 21.

[16] *Id.*

[17] *Id.*

[18] *Id.* at ¶ 22.

[19] See video file named as "me telling detective where my closet is located and them slamming me into file cabinet .mp4" (hereinafter referred to as Video Ex. 2).

[20] *Id.*; *see also* Am. Compl. at ¶ 23.

[21] Video Ex. 2; *see also* Am. Compl. at ¶ 22–23.

[22] Video Ex. 2; *see also* Am. Compl. at ¶ 24.

[23] Video Ex. 2; *see also* Am. Compl. at ¶ 25.

[24] Video Ex. 2.

Vega is seen in the video turning his head back toward the officers and asking them, among others, why he is being arrested.[25]  At that very moment, one or both of the officers slam Vega into the cabinet: a loud banging noise is heard and Vega is heard crying aloud.[26]

According to Vega, from the impact, he fell to the floor, and the two officers fell on top of him.[27]  The officers then pulled him up, and Martinez handcuffed him.[28]  The cabinet was covered in blood where Vega had made contact with it.[29]  Vega's ear was "ripped apart in two" and was bleeding;[30] he was in excruciating pain.[31]

At some point, a police unit took Vega to a hospital, where he received twelve stitches for his injuries.[32]  Following his treatment, Vega was taken to a jail and booked on charges of resisting arrest and hindering apprehension.[33]  By the time Vega filed the Amended Complaint, the charge for resisting arrest was dismissed, but the other charge remained pending.[34]

**B.  Procedural Background**

On May 20, 2021, Vega, proceeding *pro se*, initiated this lawsuit against the City of El Paso, Arias, Chacon, Martinez, and several unnamed defendants.  Compl., ECF No. 1.  On

---

[25] *Id.*; *see also* Am. Compl. at ¶ 26.

[26] Video Ex. 2; *see also* Am. Compl. at ¶ 25.

[27] Am. Compl. at ¶ 25.

[28] *Id.*

[29] *Id.* at ¶ 26.

[30] *Id.* at ¶ 26.

[31] *Id.* at ¶ 39.

[32] *Id.* at ¶ 39.

[33] *Id.* at ¶ 28.

[34] *Id.* at ¶¶ 28, 44.

August 2, 2021, Vega, by and through counsel, filed his First Amended Complaint (ECF No. 19).  Vega asserts various claims under 42 U.S.C. § 1983.

Between August 14 and 26, 2021, the Moving Defendants filed the instant motions to dismiss (ECF Nos. 26, 27, 32).  The briefing on the motions was completed by September 20, 2021.  Meanwhile, on August 30, 2021, the Court, pursuant to 28 U.S.C. § 636(b)(1)(B), referred the motions to Magistrate Judge Torres for a report and recommendation.  Order Referring Motions, ECF No. 33.  On January 19, 2022, Judge Torres issued his Report and Recommendation (ECF No. 41).  On February 2, 2022, Chacon and Martinez jointly filed their objections to the Report.  Defs.' Objs. to R&R, ECF No. 42.  Vega followed by filing a response to the objections on February 14, 2022.  Pl.'s Resp. to Defs.' Objs., ECF No. 43.

## II.   STANDARD

### A.   Standard for Reviewing a Magistrate's Report and Recommendations

When a party files timely written objections to a magistrate judge's report, the district judge must "make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made."  28 U.S.C. § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).  The district judge "may accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge."  § 636(b)(1); *see also* Fed. R. Civ. P. 72(b)(3).  As to any unobjected-to portions of the magistrate judge's report, and when no objection to the report is filed at all, the district judge applies a "clearly erroneous" and "contrary to law" standard of review.  *United States v. Wilson*, 864 F.2d 1219, 1221 (5th Cir. 1989).

### B.   Standard for Evaluating a Motion to Dismiss

To survive a motion for "failure to state a claim upon which relief can be granted," Fed. R. Civ. P. 12(b)(6), a plaintiff's complaint "must contain sufficient factual matter, accepted as

true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  The court "must accept all well-pleaded facts as true, draw all inferences in favor of the nonmoving party, and view all facts and inferences in the light most favorable to the nonmoving party." *Club Retro, L.L.C. v. Hilton*, 568 F.3d 181, 194 (5th Cir. 2009).[35]  "[W]hen, as here, a qualified immunity defense is asserted in a[] . . . motion to dismiss, the district court must—as always—do no more than determine whether the plaintiff has filed a short and plain statement of his complaint, a statement that rests on more than conclusions alone." *Anderson v. Valdez*, 845 F.3d 580, 589–90 (5th Cir. 2016).  Ultimately, the court's task is "to determine whether the plaintiff has stated a legally cognizable claim that is plausible, not to evaluate the plaintiff's likelihood of success." *Doe* ex rel. *Magee v. Covington Cnty. Sch. Dist.*, 675 F.3d 849, 854 (5th Cir. 2012) (en banc).[36]

### III.   DISCUSSION

The Moving Defendants move to dismiss Vega's claims against them—both on merits and qualified immunity grounds.  Before reaching the merits of the motions, the Court addresses three preliminary matters.

### A.   Preliminary Matters

### 1.   *Consideration of Videos*

As mentioned, Vega submitted a number of security camera videos together with his response to the motions to dismiss.  In evaluating the merits of the motions, the magistrate judge

---

[35] *See also Ramirez v. Escajeda*, 921 F.3d 497, 501 (5th Cir. 2019) ("*Iqbal* does not allow us to question the credibility of the facts pleaded . . . . *Iqbal*, instead, tells us to assume the veracity of well-pleaded factual allegations."  (cleaned up)).

[36] *See also Twombly*, 550 U.S. at 556 ("[A] well-pleaded complaint may proceed even if it strikes a savvy judge that actual proof of those facts is improbable, and that a recovery is very remote and unlikely." (internal quotes and citations omitted)).

declined to consider the videos.  R&R at 4 n.4, ECF No. 41.  The Court however believes that it

is proper to consider the videos under the circumstances of this case.

Federal Rule of Procedure 10(c) provides: "A copy of a *written instrument* that is an

exhibit to a pleading is a part of the pleading for all purposes." Fed. R. Civ. P. 10(c) (emphasis

added).[37]  "Generally, a court ruling on a motion to dismiss may rely on only the complaint and

its proper attachments." *Dorsey v. Portfolio Equities, Inc.*, 540 F.3d 333, 338 (5th Cir. 2008).

There is one recognized exception to that general rule: A district court "may also consider

documents attached to either a motion to dismiss or an opposition to that motion when the

documents are referred to in the pleadings and are central to a plaintiff's claims." *Brand Coupon

Network, L.L.C. v. Catalina Mktg. Corp.*, 748 F.3d 631, 635 (5th Cir. 2014).  And the court may

do so "without converting the motion into one for summary judgment."  5B Charles Alan Wright

& Arthur R. Miller, *Fed. Practice & Procedure* § 1357 (3d ed.).

In an unpublished opinion, the Fifth Circuit has said "on a motion to dismiss, the court is

entitled to consider any exhibits attached to the complaint, including video evidence." *Hartman

v. Walker*, 685 F. App'x 366, 368 (5th Cir. 2017) (citing *Villarreal v. Wells Fargo Bank, N.A.*,

814 F.3d 763, 766 (5th Cir. 2016)).  A number of other circuits have considered, on a Rule

12(b)(6) motion, videos that were attached to, or referenced in, a complaint and central or

integral to a plaintiff's claims, when their authenticity was not disputed. *E.g.*, *Khodorkovskaya*

---

[37] *See also Garcia v. Does*, 779 F.3d 84, 87 & n.2 (2d Cir. 2015) (considering, on a Rule 12(b)(6) motion, videos attached to complaint but declining to address the issue of whether Rule 10(c)'s "written instrument" extends to videos because the parties did not contest the inclusion of the videos); *Brownmark Films, LLC v. Comedy Partners*, 682 F.3d 687, 691 (7th Cir. 2012) (opining that for purposes of a Rule 12(b)(6) motion, "it makes eminently good sense to extend the [the incorporation-by-reference] doctrine to cover [videos referred to in a complaint], especially in light of technological changes that have occasioned widespread production of audio-visual works" but reserving the resolution of the issue for a later date because the parties did not brief the issue); *Rivera v. Robinson*, No. CV 18-14005, 2019 WL 1326588, at *3 (E.D. La. Mar. 25, 2019) (observing that the Fifth Circuit has not definitively addressed the scope of Rule 10(c)).

*v. Gay*, 5 F.4th 80, 84 (D.C. Cir. 2021); *Quinette v. Reed*, 805 F. App'x 696, 700 (11th Cir.

2020); *Chamberlain Est. of Chamberlain v. City of White Plains*, 960 F.3d 100, 101 (2d Cir.

2020); *Fijalkowski v. Wheeler*, 801 F. App'x 906, 909 n.2 (4th Cir. 2020); *Herron v. E.W.*

*Scripps Co.*, 776 F. App'x 929, 930 n.2 (8th Cir. 2019); *Myers v. Brewer*, 773 F. App'x 1032,

1035 n.2 (10th Cir. 2019); *Bailey v. City of Ann Arbor*, 860 F.3d 382, 387 (6th Cir. 2017); *Bogie*

*v. Rosenberg*, 705 F.3d 603, 608–09 (7th Cir. 2013).  One caveat to considering videos on a Rule

12(b)(6) motion is that "the court is not required to favor plaintiff's allegations over the video

evidence."  *Hartman*, 685 F. App'x at 368; *see also Quinette*, 805 F. App'x at 700 ("Where a

video in evidence obviously contradicts the nonmovant's version of the facts, we accept the

video's depiction instead of the nonmovant's account." (cleaned up)).

   Here, Vega's complaint begins by stating that "the following events [are] based on an in-

depth review of over 30 security videos with audio at the location where the above defendants

violated the Civil Rights of Plaintiff."  Am. Compl. at 1.  Throughout the complaint, Vega refers

to the videos no fewer than twenty times.  And on a critical aspect of his claims, he asserts, "[a]

review of the vidoes [*sic*] shows that [Vega] did not at all resist arrest."  *Id.* at ¶ 25.  Moreover,

the Moving Defendants do not contest the authenticity of the videos, but instead argue that the

videos "do not clearly show the conduct was unlawful."  Martinez's Reply in Supp. of His Mot.

to Dismiss at ¶ 6, ECF No. 39.  The Court therefore holds that it may properly consider the

videos in ruling on the motions to dismiss.[38]

---

[38] Specifically, in this opinion, the Court relies on the videos to the extent that they illuminate Vega's allegations in the complaint.  *See* Part I.A., *ante* (Factual Background section).  To be sure, the Moving Defendants complain that "the videos only show the top of the individuals heads and does [*sic*] not show what the Plaintiff purports them to show."  Martinez's Reply in Supp. of His Mot. to Dismiss at ¶ 13; *see also* Arias's Reply to Pl.'s Resp. to Mot. to Dismiss at ¶ 3 (complaining that the videos are grainy, difficult to view, and are mostly inaudible), ECF No. 40.  As narrated in the Factual Background section, *ante*, the Court was able to adequately discern the pertinent aspects of the events captured on two videos.  *See* Video Ex. 1; Video Ex. 2.

### 2. *The Nature of Plaintiff's Claims*

The Court observes that given the way Vega's complaint was drafted,[39] the exact nature of his claims, to some extent, appeared unclear to the Moving Defendants as well as the magistrate judge.  R&R at 7 & n.5, ECF No. 41.  For example, in his motion, Martinez states: "To the extent Plaintiff's complaint is that Officer Martinez searched or seized Plaintiff's residence, dismissal is warranted."  Martinez's Mot. to Dismiss at ¶ 9, ECF No. 26; *see also* Arias's Mot. to Dismiss at ¶ 17, ECF No. 27.  Vega, in his response to the motions, did not address such a claim. The magistrate judge however addressed it.  R&R at 8–11.  Under the causes of action sections of his complaint, Vega does not refer to "residence" or home, *see* Am. Compl. ¶¶ 46–47, though elsewhere he alleges that "an undercover officer used the keys that [Vega] provided to open a file cabinet inside the bedroom closet to search illegally," and "[t]hey then continued to completely search [his] closet and bedroom for any evidence," *id*. ¶ 31.  At most, it may be said that Vega asserts a claim for an unlawful search (not seizure) of his home.  Accordingly, the Court presumes that Vega asserts a claim for unlawful search of his home.

---

[39] Under a section with heading, "First Cause of Action," Vega appears to set out multiple claims against multiple defendants.  *See* Am. Compl. at ¶¶ 46–47.  Federal Rules of Civil Procedure provide: "If doing so would promote clarity, each claim founded on a separate transaction or occurrence . . . must be stated in a separate count or defense."  Fed. R. Civ. P. 10(b); *see also Weiland v. Palm Beach Cnty. Sheriff's Off.*, 792 F.3d 1313, 1322–23 (11th Cir. 2015) (stating that "shotgun pleadings" "fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests," and illustrating two forms of "shotgun pleadings"— as where a complaint does not "separat[e] into a different count each cause of action or claim for relief" and as where a complaint "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against").

Having reviewed Vega's Complaint, in view of the parties' motion briefs, the Court understands him to assert the following claims, which are at issue on the motions to dismiss:

| Claim No. | Nature of Claim | Against which defendants |
|---|---|---|
| 1 | Unlawful search of Vega's home in violation of the Fourth Amendment[40] | Moving Defendants (*i.e.*, Arias, Chacon, and Martinez) |
| 2 | Unlawful search of Vega's person in violation of the Fourth Amendment[41] | Moving Defendants |
| 3 | Unlawful arrest of Vega in violation of the Fourth Amendment[42] | Moving Defendants |
| 4 | Use of excessive force in violation of the Fourth Amendment[43] | Moving Defendants |
| 5 | Use of excessive force in violation of the Fourteenth Amendment[44] | Moving Defendants |
| 6 | Making false police report in violation of the Due Process Clause of the Fourteenth Amendment[45] | Arias and Chacon |
| 7 | *Franks* claim for judicial deception[46] | Arias and Chacon |

Throughout the remainder of this Memorandum Opinion and Order, for brevity, the Court will, at times, refer to the claims listed above by their corresponding "Claim No."

---

[40] Am. Compl. at ¶ 31; Martinez's Mot. to Dismiss at ¶ 9.

[41] Am. Compl. at ¶ 47(a).

[42] *Id.* at ¶ 47(a); Pl.'s Resp. to Mot. to Dismiss at ¶ 22, ECF No. 34.

[43] Am. Compl. at ¶ 47(b)–(c); Pl.'s Resp. to Mot. to Dismiss at ¶¶ 19, 22, 26.

[44] Am. Compl. at ¶ 47(b)–(c); Pl.'s Resp. to Mot. to Dismiss at ¶¶ 19, 22, 26.

[45] Am. Compl. at ¶¶ 49–50; *see also Morgan v. Chapman*, 969 F.3d 238, 250 (5th Cir. 2020).

[46] *Id.* at 15 (page no.), ¶ 72(c); Pl.'s Resp. to Mot. to Dismiss at ¶ 20; *see also Franks v. Delaware*, 438 U.S. 154 (1978); *Terwilliger v. Reyna,* 4 F.4th 270, 281 (5th Cir. 2021).

### 3.  *The Magistrate Judge's Recommendations*

The magistrate judge recommended dismissal of Claim Nos. 1, 2, 3, 6 and 7 (see table, *supra*).  R&R at 7–13, 19–21.  Vega did not file any objection to the magistrate's Report. Having carefully reviewed the Report and Vega's allegations, the Court concludes that the magistrate's findings and recommendations as to these claims are not clearly erroneous, nor contrary to law, and therefore, accepts them.

As to Vega's Fourth Amendment excessive force claim (Claim No. 4, *supra*) against Arias, the magistrate judge recommended that Arias's motion to dismiss should be granted because Vega failed to plead Arias's personal involvement in Vega's arrest.  R&R at 15, 19; *see also* Arias's Mot. to Dismiss at ¶ 21 (arguing "Plaintiff alleges no specific instances of physical contact between him and Officer Arias and no allegation that Officer Arias arrested him.").  A review of the videos confirms that Arias did not make any physical contact with Vega when he was being arrested by Chacon and Martinez.  *See* Video Ex. 2.  Again because Vega did not file any objection to the Report, the Court finds that the magistrate's findings and recommendations as to this claim are not clearly erroneous or contrary to law, and therefore, accepts them.

The magistrate, however, recommended that Chacon's and Martinez's motions to dismiss should be denied as to Vega's Fourth Amendment excessive force claims (Claim No. 4, *supra*). R&R at 14–19.  Chacon and Martinez objected to these adverse recommendations, and therefore, in the following, the Court conducts a de novo review of Vega's Fourth Amendment excessive force claims against Chacon and Martinez.  In addition, the Court addresses the Moving Defendants' challenge to Vega's Fourteenth Amendment excessive force claims (Claim No. 5, *supra*), which the magistrate did not explicitly address.

**B.  Plaintiff's Fourth Amendment Excessive Force Claims Against Chacon and Martinez.**

At the motion-to-dismiss stage, Chacon and Martinez are entitled to qualified immunity unless Vega has alleged facts sufficient to plausibly show that (1) the officers' conduct violated a constitutional right and (2) the constitutional right was "clearly established" at the time of the alleged misconduct.  *Harmon v. City of Arlington, Tex.*, 16 F.4th 1159, 1163 (5th Cir. 2021). Based on the facts alleged in Vega's complaint, the magistrate judge concluded (1) that he has stated a claim that Chacon and Martinez violated his Fourth Amendment rights by using excessive force against him and (2) that those rights were clearly established at the time.  R&R at 18.  Chacon and Martinez challenges only the first conclusion.[47]  Ultimately, the Court reaches the same conclusions as did the magistrate judge but based on a different reasoning.

"The Fourth Amendment creates a right to be free from excessive force during a seizure." *Trammell v. Fruge*, 868 F.3d 332, 339–40 (5th Cir. 2017).  To state a Fourth Amendment excessive force claim, a plaintiff's complaint must allege that he "suffered (1) an injury that (2) resulted directly and only from the use of force that was excessive to the need and that (3) the force was objectively unreasonable."  *Westfall v. Luna*, 903 F.3d 534, 547 (5th Cir. 2018) (internal quotes and citations omitted).  In their objections to the magistrate's Report, Chacon and Martinez do not contest the first element (that Vega suffered injury) but challenges the magistrate's analysis of the remaining elements.  Defs.' Objs. to R&R at 5.  "The second and third elements collapse into a single objective-reasonableness inquiry."  *Peña v. City of Rio Grande City*, 879 F.3d 613, 619 (5th Cir. 2018).  And that inquiry is guided by the following

---

[47] Specifically, Chacon and Martinez state: "As such, the Plaintiff has not shown that a federal statutory or constitutional right was violated.  Accordingly, Officers Martinez and Chacon are entitled to qualified immunity for their actions taken on that date."  Defs.' Objs. to R&R at ¶ 12.

*Graham*[48] factors: (1) the severity of the crime at issue, (2) whether the suspect poses an immediate threat to the safety of the officers or others,  and (3) whether he is actively resisting arrest or attempting to evade arrest by flight.  *Id.*

Turning to the first *Graham* factor, Vega was arrested for a minor offense.  *See Reyes v. Bridgewater*, 362 F. App'x 403, 407 n.5 (5th Cir. 2010) (finding the "severity" *Graham* factor militated against use of force where the alleged crime was "at most a misdemeanor"); *see also Westfall*, 903 F.3d at 547–48 (classifying a Class B misdemeanor for which plaintiff was arrested as a "minor offense" and concluding officer's use of force was objectively unreasonable).  Vega alleges that at the time of his arrest, Chacon accused him of lying to protect Robert, Am. Compl. at ¶ 23, and Vega was later charged with hindering apprehension, *id.* at ¶ 39.  Texas law provides: "A person commits an offense if, . . . with intent to hinder the arrest of another under the authority of a warrant or capias, he: (1) harbors or conceals the other; (2) provides or aids in providing the other with any means of avoiding arrest or effecting escape; or (3) warns the other of impending discovery or apprehension."  Tex. Penal Code § 38.05(a).  Except under circumstances not relevant here, "an offense under this section is a Class A misdemeanor."  *Id.* § 38.05(c).  The Fifth Circuit has held that an offense under § 38.05(a) "constitutes a minor offense for purposes of our Fourth Amendment analysis."  *Jimenez v. Wood Cnty., Tex.*, 660 F.3d 841, 848 (5th Cir. 2011).

Relevant to the second and third *Graham* factors, Vega alleges that Chacon and Martinez slammed him into the metal cabinet and that a review of the videos shows that he did not resist arrest when the officers slammed him.  Am. Compl. at ¶¶ 24–26.  Nothing in the videos contradicts these allegations.  The Court's independent review of the videos suggests that he was

---

[48] *Graham v. Connor*, 490 U.S. 386, 396 (1989).

compliant with the officers' orders: at an earlier time, Arias ordered him to sit down and not to move by the cabinet—Vega complied; at the time of his arrest, Chacon ordered Vega to stand up—Vega complied; Chacon ordered him to turn around—Vega complied.  *See* Video Ex. 1; Video Ex. 2.  Seconds after Vega attempted to turn his face toward the officers behind him, asking them why he was being arrested (he was addressing them by "sir," whereas one of the officers used profanity), a loud banging noise is heard in the video and Vega is heard crying aloud.  *See* Video Ex. 2.  There is nothing in Vega's complaint or the videos (to the extent visible) that suggests that Vega resisted arrest, attempted to flee, or posed a threat to the officers or others.

Further, "[i]n evaluating excessive force claims, courts may look to the seriousness of injury to determine whether the use of force could plausibly have been thought necessary, or instead evinced such wantonness with respect to the unjustified infliction as is tantamount to a knowing willingness that it occur."  *Westfall*, 903 F.3d at 549 (internal quotes and citation omitted).  Vega alleges that from the impact, one of his ears "ripped apart in two" and was bleeding, and he suffered "excruciating pain from his ear."  *Id.* at ¶¶ 26, 39.  Subsequent to the incident, Vega alleges, he was diagnosed with significant hearing loss in the injured ear, depression, acute stress disorder, and post-traumatic stress disorder.  *Id.* at ¶ 43.  He further alleges that he experiences episodes of vertigo which he never experienced before the injury.  *Id.*  Viewing these allegations in the light most favorable to Vega, he sustained severe and life-changing injuries.  *See id.* at ¶ 8 (alleging that Chacon and Martinez "inflicted excessive force . . . causing severe injuries to Plaintiff); *see id.* at ¶ 44 (alleging that "[Vega]'s life . . . has forever been changed by the actions of the Defendants."); *see also Westfall*, 903 F.3d at 549 ("The injury to Westfall's spine that allegedly resulted from this incident is serious and one that affects her

daily life.  We take that into consideration in determining that a reasonable officer would have known that Luna's use of force was unconstitutionally excessive.").

Drawing all inferences in Vega's favor, the Court concludes, at pleading stage, that Chacon's and Martinez's use of force in slamming Vega against the metal cabinet was excessive and objectively unreasonable under the circumstances.  *See Westfall*, 903 F.3d at 549 (holding "a jury could reasonably find that the *degree* of force Luna used—slamming Westfall onto her brick porch—did not match the need" where Westfall was not actively resisting the officers or trying to flee (emphasis in original)); *Trammell*, 868 F.3d at 342 (holding that a reasonable jury could find that "Trammel's pulling his arms away from the officers," along with his refusal to cooperate with their instructions or answer their questions, "did not justify the officers' decision to tackle Trammel to the ground"); *Bush v. Strain*, 513 F.3d 492, 502 (5th Cir. 2008) (holding that it was objectively unreasonable for an officer to slam an arrestee's face into a nearby vehicle when the arrestee was not resisting or attempting to flee); *Goodson v. City of Corpus Christi*, 202 F.3d 730, 740 (5th Cir. 2000) (holding that a fact issue existed as to the objective reasonableness of the officers tackling the plaintiff to the ground where he had pulled back his arm and stepped back after an officer grabbed it and he was not fleeing).  Vega has sufficiently pleaded that Chacon and Martinez violated his Fourth Amendment rights by using excessive force.

Turning to the second prong of the qualified immunity analysis, "'[c]learly established' means that, at the time of the officer's conduct, the law was sufficiently clear that every reasonable official would understand that what he is doing is unlawful."  *D.C. v. Wesby*, 138 S. Ct. 577, 589 (2018) (internal quotes and citation omitted).  "While there does not have to be a case directly on point, existing precedent must place the lawfulness of the particular arrest beyond debate."  *Id.* at 590 (same).  This requires identification of "a case—usually, a body of

relevant case law—in which an officer acting under similar circumstances was held to have violated the Constitution." *Joseph* ex. rel. *Est. of Joseph v. Bartlett*, 981 F.3d 319, 330 (5th Cir. 2020) (cleaned up).  "The central concept is that of 'fair warning': The law can be clearly established despite notable factual distinctions between the precedents relied on and the cases then before the Court, so long as the prior decisions gave reasonable warning that the conduct then at issue violated constitutional rights." *Kinney v. Weaver*, 367 F.3d 337, 350 (5th Cir. 2004) (en banc) (internal quotes and citation omitted).

At the time the incident took place, May 2019, there existed several Fifth Circuit opinions where an officer acting under similar circumstances was held to have used excessive force in violation of the Fourth Amendment.  *E.g.*, *Westfall*, 903 F.3d at 549 (reversing grant of summary judgment on qualified immunity grounds); *Trammell*, 868 F.3d at 345 (same); *Goodson*, 202 F.3d at 740 (same); *Bush*, 513 F.3d at 502 (holding defendants were not entitled to qualified immunity).  It was clearly established that under the facts alleged, Chacon's and Martinez's use of force against Vega was unlawful and that a reasonable officer in their positions had fair notice of the unlawfulness.  *See Sam v. Richard*, 887 F.3d 710, 714 (5th Cir. 2018) ("[I]t was clearly established at the time of this incident that pushing, kneeing, and slapping a suspect who is neither fleeing nor resisting is excessive.").  The Court therefore concludes that, at this stage of the litigation, Chacon and Martinez are not entitled to qualified immunity against Vega's Fourth Amendment excessive force claim.

## C.  Plaintiff's Fourteenth Amendment Excessive Force Claims Against the Moving Defendants

Chacon and Martinez also move to dismiss Vega's Fourteenth Amendment excessive force claim (Claim No. 5, *supra*).  Chacon's Mot. to Dismiss at ¶¶ 25–28, ECF No. 32;

Martinez's Mot. to Dismiss at ¶¶ 25–28. Although Arias does not specifically challenge this claim, he does challenge excessive force claims generally. Arias's Mot. to Dismiss at ¶¶ 18–27.

"While the Fourth Amendment protects arrestees, once an arrest is complete, pretrial detainees are protected by the due process clause of the . . . Fourteenth Amendment[]." *Gutierrez v. City of San Antonio*, 139 F.3d 441, 452 (5th Cir. 1998). "Although the point at which an arrest ends and pretrial detainment begins is not always clear, . . . the . . . Fourteenth Amendment[] begin[s] to protect persons *after* the incidents of arrest are completed, *after* the plaintiff has been released from the arresting officer's custody, and *after* the plaintiff has been in detention awaiting trial for a significant period of time." *Id.* (internal quotes and citation omitted) (emphasis in original).

Martinez and Chacon point out that there are no allegations of any physical contact between Vega and either of the two officers—after the arrest was completed. *E.g.*, Martinez's Mot. to Dismiss at ¶ 28. Likewise, Arias points out that there is no allegation of any specific instance of physical contact between Vega and Arias. Arias's Mot.to Dismiss at ¶ 21. Accordingly, the Court finds that Vega's Fourteenth Amendment excessive force claim must be dismissed.

## D. Leave to Amend

"[A] plaintiff's failure to meet the specific pleading requirements should not automatically or inflexib[ly] result in dismissal of the complaint with prejudice to re-filing." *Hart v. Bayer Corp.*, 199 F.3d 239, 247 n.6 (5th Cir. 2000). District courts often afford plaintiffs at least one opportunity to cure pleading deficiencies before dismissing a case, "unless it is clear that the defects are incurable or the plaintiffs advise the court that they are unwilling or unable to amend in a manner that will avoid dismissal." *Great Plains Tr. Co. v. Morgan Stanley Dean*

*Witter & Co.*, 313 F.3d 305, 329 (5th Cir. 2002).  However, granting leave to amend is not required if "the plaintiff has already pleaded his 'best case,'" *Brewster v. Dretke*, 587 F.3d 764, 767–68 (5th Cir. 2009), or "any amendment would be futile," *US Bank Nat'l Ass'n as Tr. for Registered Holders of Aegis Asset Backed Sec. Tr. Mortg. Pass-Through Certificates, Series 2005-1 v. Richardson*, 829 F. App'x 13, 15 (5th Cir. 2020).

For several of the claims that the Moving Defendants challenged, Vega did not even address them in his response to their motions.  *Cf. In re McCoy*, 666 F.3d 924, 926 (5th Cir. 2012) (In ruling on a Rule 12(b)(6) motion "we look to see whether [the plaintiff's] pleadings, including [his] *legal arguments*, plausibly state a claim."  (emphasis added)).  Moreover, although he filed a response to Martinez and Chacon's objections to the magistrate's Report, he did not request leave to amend.  Vega's litigation conduct thus suggests that he is unwilling to prosecute the claims that the magistrate judge recommended be dismissed, or that he has pleaded his best case for those claims.  *See Wiggins v. Louisiana State Univ.-Health Care Servs. Div.*, 710 F. App'x 625, 627 (5th Cir. 2017) ("A plaintiff has pleaded her best case after she is apprised of the insufficiency of her complaint." (internal quotes and citation omitted)).

Nevertheless, out of an abundance of caution, the Court will *sua sponte* afford Vega an opportunity to amend his complaint to cure the pleading insufficiencies the magistrate judge pointed out, but only as to Claim Nos. 1 (unlawful search of home), 2 (unlawful search of Vega) and 6 (making false police report).  Further, to the extent that Vega does avail himself of this opportunity, he should, to promote clarity, separately set out each of these claims and his Fourth Amendment excessive force claim in the amended complaint to avoid the sins of "shotgun pleadings."  *Weiland*, 792 F.3d at 1322–23, *supra*; *see also* Fed. R. Civ. P. 10(b), *supra*.

## IV.   CONCLUSION

For the foregoing reasons, **IT IS ORDERED** that United States Magistrate Judge Miguel A. Torres's "Report and Recommendation" (ECF No. 41) is **ACCEPTED**.  Specifically, with regard to Plaintiff Vega's Fourth Amendment excessive force claims asserted against Defendants Chacon and Martinez, the Court accepts the magistrate judge's ultimate recommendation but based on a different reasoning.

**IT IS THEREFORE ORDERED** that Defendant Arias's "Rule 12(b)(6) Motion to Dismiss Plaintiff's First Amended Complaint" (ECF No. 27) is **GRANTED**, Defendant Chacon's "Motion to Dismiss Plaintiff's First Amended Complaint" (ECF No. 32) is **GRANTED IN PART and DENIED IN PART**, and Defendant Martinez's "Motion to Dismiss Plaintiff's First Amended Complaint" (ECF No. 26) is **GRANTED IN PART and DENIED IN PART**.  Specifically, Plaintiff's Fourth Amendment excessive force claims asserted against Defendants Chacon and Martinez **SURVIVE** their motions to dismiss.  All other claims asserted by Plaintiff against Defendants Arias, Chacon, and Martinez are **DISMISSED**.

**IT IS FURTHER ORDERED** that not later than **twenty-one (21) days** from the date of, and consistent with, this Memorandum Opinion and Order, Plaintiff **MAY FILE** an amended complaint regarding his claims for unlawful search of his home, unlawful search of his person, and making false police report (*i.e.*, Claim Nos. 1, 2, and 6 in the list of claims set forth in Part III.A.2, *ante*).

**So ORDERED and SIGNED this  15th  day of March 2022.**

_____
**DAVID C. GUADERRAMA**
**UNITED STATES DISTRICT JUDGE**